Good morning. May it please the court. I'm Joan Robin on behalf of Mr. Edward Wilson. Given today's time constraints... You're representing whom? Mr. Edward Wilson. Okay, thank you. You're welcome. Given the time constraints, I've selected one issue to focus my portion of the oral argument upon, and with respect to the remaining issues that I'm not able to address today, I would simply rely on my brief as to those arguments. But the central point that I want to focus on today involves the jury instructions and the jury instruction procedure employed by the district court. Specifically, Mr. Wilson contends that the district court improperly instructed the jury with respect to the need to make an individualized determination of drug quantity culpability for purposes of 841B. As I see it, this issue has two parts. The first, or two questions, I should say. The first is whether or not the instructions actually given by the court properly instructed the jury as to the law, and the second being whether or not the court erred in refusing to instruct the jury on the two particular instructions that were requested by defense counsel. With respect to the first, it's a de novo standard of review, and on the second question, it's an individualized decision. I don't think that the two defendants here were sufficiently individuated. That's correct. But when the district court actually gave the jury two separate verdict forms . . . Correct. . . . did it not, and there was one separate verdict form for each of the defendants . . . Correct. . . . and then the court explains to the jury that it would have to determine separately whether each defendant in and of itself was guilty. Wouldn't those separate verdict forms, and here, the district court was very careful to keep it separate. Had the district court ever actually said, you need to consider these individuals separately, and given one of the instructions that I specifically asked for, I agree we would be in a different position. What else could a separate verdict form mean? Not the way that it was explained. I think I addressed in my brief that the judge actually, at one point, instructs the jury that they are to proceed with their deliberations and that for the purpose of reaching a unanimous verdict. It does say your verdict must be unanimous as to each of the defendants, but when explaining the verdict form, it says now you'll have an opportunity to check either guilty or not guilty for Mr. Collins, and then if you find guilty, there's a place for drug weight, and then the same for Mr. Wilson is exactly what the court says, the same for Mr. Wilson. So he doesn't, and I believe I cited to the Joint Appendix in that portion of my reply brief, but he certainly doesn't say you need to make a separate determination with respect to Mr. Wilson when it comes to individual determination of drug quantity and what is individually foreseeable to Mr. Wilson, not necessarily foreseeable to both Mr. Wilson and Collins together. Your repeats over and over again, you have to decide this case based on the evidence presented in this courtroom. In this courtroom, right, but there was evidence obviously against both, and the evidence against Mr. Collins was just voluminous in comparison to the evidence against Mr. Wilson. And just to reiterate, there was testimony that Mr. Collins was involved with an extensive drug dealing with Mr. Buckner, dealing up to two kilograms every two days, none of which implicated Mr. Wilson. Mr. Wilson wasn't present for any of it. The district court's instruction said, you're instructed that defendants are accountable for the quantity of controlled substances that they personally distributed, or that they could reasonably foresee that others would distribute during an in furtherance of the conspiracy. That's a very commonplace conspiracy notion, which is reasonable foreseeability, and it says you can't attribute these drugs to the defendant unless, number one, they personally distributed it themselves, or they could reasonably foresee that others would distribute it. And that serves, I don't understand why that wouldn't serve to locate culpability on an individual basis, that instruction. Because it says they, so what is reasonable foreseeable to the two of them in what they reasonably foresee, and including Mr. Collins and Mr. Wilson in one lump together. Collins specifically requires an individual determination of reasonable foreseeability. It also lumps them together in the earlier part of what they personally distribute, and they being the subject, the two of them, not simply Mr. Wilson, but the two of them lumped together. What about the word personally? Personally simply means in person. It's an adverb. It modifies the verb. It doesn't modify the subject. It doesn't change who is doing the action. The people that are doing the action is they. If somebody personally does something, does it mean that somebody else did not? No, it means that they can apply to either, I mean, personally can apply to either a single person or a group of persons. In this indication, in this example, the court is replying when saying they personally, it simply means that these two personally. In other words, these two in person. That's the correct grammatical sense of it, and certainly the court is required to issue clear instructions. Our instructions were clear, the ones that the district court said that he would give, entitled minimum quantity of narcotics. That's not what he gave. He gave something entirely different. It was a non-model instruction by the government, which misstated the law. I see that I'm into Mr. Robin, I know you weren't going into sufficiency of the evidence, but could you answer one question for me? And that is, does the record show who owned the blue Acura? No, it does not. It's very clear. Mr Buckner does not know who owned the blue Acura. Okay, thank you. Libby. Thank you. May it please the court. Chris Libby on behalf of Mr Collins. I'll first focus on our issue for Mr Collins motion to suppress. Agent Bryant asked Houston police officer Lee if Mr Collins consented a search of his vehicle, of the vehicle he was driving. Officer Lee stated yes. That's the entirety of the evidence on voluntary consent upon which the court based its finding. Some notable facts in the record are the fact that one officer Lee isn't someone that was known to anyone else who testified in the case. His age was not known to anyone else that testified in the case. Someone surmised that he looked about 30. How long he had been on the force was not known and beyond surmised that he had likely attended a police academy since he was a police officer that they had just met minutes before. There was no, there was no evidence about what it would even mean to him to use the term consent. And I think a series of questions that was um put forward at J. A. 1 45 pretty much says it all for this case. Agent Bryant states that Lee probably went to the police academy. Then he was asked. Other than that, you have no idea what the term consent means to him. That's correct. I have no idea. Did Collins present any evidence at the suppression hearing? No. That's odd, isn't it? If you feel like you did not consent, of course you don't have to. Certainly Collins doesn't have to come forward. But when wouldn't there, wouldn't it? Wouldn't it have been helpful to have presented some evidence to the effect that you wouldn't have been helpful. But judge, I would submit to you respectfully that it would be on this record that it would be unfair to for any defendant to even have to consider subjecting himself to cross examination on any point because it was so obvious at that point that based upon this record that that based again solely on that, based upon that conversation alone, you search the car. Yes. With that record, it's utter silence on voluntariness, absolute silence. Make any difference that the defendant was sitting there kind of casually while this was going on, making no objection. It makes it actually does not make it a difference. And here's why. I understand that that's one of the two points the government makes in its brief. He was, quote, appearing confident and was wearing a quote smirk on his face. Well, I don't know about smirks. I'm not into that. Right. Okay. The fact that he was actively the evidence is that none of these people had ever been up close to Mr Collins, didn't know how he normally holds his face, doesn't know what he's thinking, doesn't even know if it's his vehicle. Um, the government also makes the point that somehow that because he didn't just walk away, that must mean he consented. Well, he didn't just walk away because there were four FBI vehicles and a police cruiser right around him that had just obviously done a serious traffic stop. He probably thought he was under arrest. But I mean, the point is, is that the fact that he has is holding a particular look on his face cannot possibly meet the government's burden in this situation. I think what this really is is a very narrowly presented, unlikely to present itself again issue of taking 104 a simply too far. The government flew four people from Houston, um, to testify in this matter. There's nothing on the record about why they didn't have the one person that had the actual knowledge of the only thing that truly mattered in the whole hearing. Both of the officers were present. Both of both Bryant and and contribute were were were were present. It wasn't as if there was some the officers were in absentia or something. They were both present at the time of the search. No, actually what happened was contribute was over at the other scene. Bryant was present in his FBI unmarked car behind Officer Lee watching it from a distance. But he absolutely did not hear Mr Collins say one word wasn't within listening distance whatsoever. And then he began the search with other officers eventually contribute. I thought they were both at the scene. Well, contribute came to the scene soon enough after. But Bryant was the one who was the only person who heard Lee say yes to the question. Did you consent? So I may not be exactly perfect on the moment contribute arrived, but it hardly matters because he didn't see anything concerning the statement Lee made about consent, didn't see it, didn't hear it, didn't anything. He generally understood that that had occurred, but he is not. He did not hear Lee say it so that that didn't happen. It's just Bryant. Um, you know, I think that the pose there could be. I would say it would be a stretch even if these agents knew this officer were familiar with his prior work or his notion of what the term consent might mean. But utter absence of that on this record. Absolutely not one bit. This is a guy that randomly, um, they met that that night just happened to be there. And they pulled up to him and said, Will you stop this guy? Look for a traffic violation and stop this guy? Yes, that's his whole involvement. They have no idea who this guy is. It could have been his first day on the force as far as this record shows. And, you know, I just think that if they were going to use hearsay to establish such an important and difficult to find finding his voluntariness, um, they could have if they only wanted to bring for police, they could have brought the guy that mattered. Officer Buddha Reb at the beginning. He he hardly added anything to the motion. And yet they called it to the government that this was an issue at the hearing. It's voluntariness of the consent. Well, judge, we filed a pleading and I don't have the J site right off the top of my head on where are pleading, which is in the J. A. Site. I filed a pleading which stated that the voluntariness of the consent, I don't have it memorized what we wrote. But what I said is his vehicle was searched without cause. I might have used the term consent, but without, um, probable cause and or and I layered it in a certain way. 54 of the joint appendix. If you're looking at it, then I'm sure you're right. Yes, yes. Yes, that looks like what? You know, in thumbing through it, I didn't see the word consent. I didn't see the issue of consent being challenged, which makes I'm just curious. The government was to know that that was a fair point. I think what's challenged is is that is is that the car was searched for no Fourth Amendment justification at all. The government coming in with their theory of justification, as you can tell from the presentation of the questions in this motion was set a long time in advance, was coming in with a consent theory. The only theory they argued on the brief either. They knew that was the issue and didn't bring the guy, and it's just taken one of four a bit too far. Uh, if you didn't put on any evidence, um, and the standard of review is on these consent searches that we have toe. We overturn a finding of consent only if it's under a lot of more decision implausible in light of the entire record. How's the district court's finding implausible in light of the entire record? Two reasons. You know, when when there's no evidence put on. Thank you. Two reasons. First, Judge, it may be true that a title to deference, but we're entitled to a de novo review of all of the facts in light most favorable to the government being true. If that establishes voluntary consent. Secondly, as I put laid out in our brief and is not contested. In fact, in a moment, I'll explain was even supported by the government. The trial court stated the facts wrong by stating that two officers had heard the guy consent the government in their brief, and I'm not denigrating their argument. It's a hard argument for them to make, but the government stated that that Collins consent to the search, but was heard from other law enforcement officers with firsthand knowledge that Collins and consented false. Absolutely false. That never happened. My guess is they're looking at what the trial court said respectfully request the court to look at that fact that simply never happened. So there shouldn't be deference given to the trial court's finding for that reason. But more importantly, we're entitled to a de novo review standard on the question of voluntariness, and there's an utter lack of anything on the record. Consent is not voluntary consent. Those two things are not the same. And I'll thank you. I'll reserve my remaining time for Thank you, Mr Lybeck. Mr Ben Ari. Good morning, mate. Please the court. If I could speak first about the jury instruction issue raised by appellant Wilson in this case, I would I would submit to the court that it's sort of in responding to the argument on jury instructions and the totality of the charge. It also is a worthwhile consideration of what the evidence was with respect to foreseeability and sort of how the Collins and Wilson drug trafficking operation worked. Um, and the one witness that speaks most clearly to that point is Christopher Buckner. He was a cooperating witness. He's the only witness that actually had dealt with both Collins and Wilson. And if you look at Mr Buckner's direct, he's asked to characterize Collins and Wilson's relationship specifically with respect to cocaine dealing. I'm looking at joint appendix page 4 56. And with respect to cocaine dealing, how would you characterize their relationship? And his response is like brothers. They are like they are like a brotherly like brothers and business partners. So when he says their business partners, he's not talking about some other sort of business. He's talking about the cocaine distribution business, the cocaine dealing business. And so this I would portioning out of what's one defendant selling, what's reasonably foreseeable that one defendant, what's the second defendant selling, what's reasonably foreseeable to that second. But you agree that it's much weaker case as to Wilson, do you not? I don't agree with that necessarily. Just judge Keenan. Well, the first of all, I would say that everything else about the jury's consideration is sort of got to be viewed in the context of this judge nailed Mr. Collins, you know, saying he was selling what, two days, two kilos worth of cocaine. He would go through two days minimum because he's a wholesaler. I mean, he was quite specific with regard to Mr. Collins. And we don't have that with regard to Mr. Wilson. Well, there's evidence of a sale. There's this this vague reference to being business partners, but it's not the same. So I think you need to let's just say I'm right on that, that the evidence isn't as strong as Mr. Wilson. Why is it sufficient as to Mr. Wilson? What you have with respect to Mr. Wilson on top of this statement that their partners and all of the normal meeting that partner conveys is you have other indicia that the jury could rely on a support for that. And one of the best pieces of government evidence on that fact is that one at one of the deals, uh, there was evidence that Buckner arranges to purchase cocaine from Collins. He makes phone calls to Collins. It's agreed with Collins. On the day of the transaction, there's phone traffic back and forth shown by the phone records and evidence and testimony. Buckner calls Collins. Collins tells Buckner he can't make it. He's sending someone. There's phone calls that go back and forth between Buckner and Collins. There's phone calls to go back between Collins and Wilson. Wilson shows up to deliver the drugs. Now, here's the critical piece, in my opinion, your honor, is that Buckner testifies that he overpays for that cocaine. He gives Wilson too much money for the cocaine he's arranged to purchase from Collins. And that is something that business people, but particularly drug dealers, it's not a business where they have the recourse. If somebody rips them off, they can go to the police. They're very careful about these sort of things. And why does Buckner feel confident in overpaying Wilson? Because he knows that the next time he buys cocaine from Wilson's partner, Collins, he will be given a credit for that amount. And so that is another strong indicia, I would submit, of the way that they operate together. It's sort of a singular, it supports the inference that it's a single pool of drugs, a single pool of money. With respect to Buckner's testimony, you may have already touched on this, but I thought there was evidence from Buckner's testimony that when Collins was unavailable. Well, that is certainly what happened on this one occasion that I'm talking about. Collins was unavailable and Wilson ends up showing up to deliver the drugs and take the money. And was Collins supposed to be there? And for some reason he wasn't. So he sent Wilson instead, or Wilson came instead. Correct. That's, that's, I think, a fair interpretation of what the evidence showed. Buckner, I think, testified pretty much that's exactly what happens. Collins was simply unavailable at the time that the drop off and sale needed to occur. So he sent Buckner. Other indicia, Judge Keenan, of this partnership, and you asked the question of my colleague, Ms Robin, about who owns the blue Acura. Buckner's testimony was that he knew that Wilson operated a blue Acura. And then you have the traffic stop that occurs sometime later, where Collins is stopped in, uh, in the blue Acura. And you have various photos in evidence. And so ownership, I certainly can see that the title holder to that blue Acura was not proven. But I would, I would argue that there certainly was enough in the record that the jury could find first that it was the same vehicle being operated by Collins and Wilson over this time period in the drug trafficking context. And it's, it's an Acura SUV. Am I correct? Well, the testimony from Buckner, yes, the testimony from Buckner was that he knew Wilson to operate the car that the blue Acura SUV, which is also the car. But I thought he had an SUV that he permitted Collins to drive. So and that is, you made the contention on page 26 of your brief that that, um, Wilson's SUV, which he permitted Collins to drive, was outfitted with, um, a hidden compartment designed to conceal contraband. Correct. And so what we have, the evidence that backs up that point, how did that testimony come through? Come in. So Buckner had evidence. Come in. Buckner testifies that Collins operated the blue Acura SUV, backed up by the law enforcement surveillance of the deal that we've been discussing, where Buckner makes the arrangements with Collins. But Wilson shows up when he shows up to deliver the drugs. It's in the blue Acura SUV. There's certain photographs in evidence. Then later on down the road, after Buckner is incarcerated, we have this traffic stop. That's the subject of the suppression hearing where Collins has stopped in the blue Acura SUV. This search that we've heard about from from my colleague, Mr Liebig occurs in the hidden compartment is discovered. Interestingly, the evidence at trial again, I believe mainly for Mr Buckner, was that Collins normally operated a red pickup truck. Uh, some point before trial, that red pickup truck was located. Buckner's testimony. What else did you introduce? You introduced cell phone records, didn't you? Correct. The cell and that there were a number of calls and the cell phone records indicated Wilson was really in the loop. Certainly, with respect to the, uh, with respect to the one deal where Wilson shows up to make the delivery, the pattern of calling clearly supports the notion that Buckner's calling Collins to set the deal up on on the morning leading up to the deal. And then after Collins determines that he's not available, the calls that go back and Wilson again further corroborate the way that the drug deal occurred. What evidence is there in the record as to when Collins first became involved in the conspiracy? Is there any evidence on that? So other than the sale that he participated in? I'm sorry, Collins or Wilson? I'm sorry, Wilson. Yeah, thank you. Um, with respect to Wilson. So it's clear that Buckner deals more first became involved in the conspiracy again. I think you would have to look back to, um, to Buckner's testimony as he is the one who the only one who personally knew Wilson out of the government's beyond the statement that they were business partners. What other evidence points to a start date for Wilson's participation in the conspiracy? I think that it comes from Buckner's testimony. He he testifies to in addition of the partner evidence that we've talked about, he testifies that he actually buys drugs from Wilson personally, although I'm not sure he puts a date on it. But certainly at the point that these the series of controlled purchases occurs where Wilson is actually showing up to deliver drugs, I would submit that that's clear evidence that at least at that point, Wilson has become involved in the conspiracy. Certainly he's there's evidence that he's dealing right with Collins in terms of the cell phone records and in terms of the fact that he shows up at Buckner's location, a location that is only made known to Collins. He delivers drugs, he takes the proceeds and then the next time Buckner buys drugs from Collins, he's given a credit for his overpayment. So I would submit that that is evidence that at least as early as the time period of these control buys, Wilson is involved. Um, turning just real briefly to the question of jury instructions, and I indicated that I thought it was a related question to this sufficiency of the evidence against Wilson question. Um, when you look at the jury charge as a whole, I would submit that there's nothing at all incorrect about the instructions that Judge Hilton gave the Collins case, not Mr Collins in this case, but this court's Collins case, uh, sets forth that it's a different inquiry as to whether there's sufficient evidence that somebody is involved in a conspiracy, which does sort of take into account a larger, possibly larger pool of drugs and a finding of a drug weight personally distributed by a defendant and what's reasonably foreseeable to that defendant. Here you have the instruction that that I believe Judge Wilkinson was asking about to hold the defendants accountable for the quantity of control substance that they personally distributed or that they could reasonably foresee that others would distribute during and further into the conspiracy. And then you have the verdict forms where Judge Hilton instructs several times actually, when he's explaining these jury verdict forms that the jury has to be unanimous to each count and as to each separate, uh, separate opponent said in response to my, one of my questions that the, um, use of the word day was infirm and lumped them together. What do you say with response to that? Well, Your Honor, I don't, um, I don't believe I'm revealing any secrets and Department of Justice practice, but it's common when you are conforming jury instructions written for single defendant cases to multiple defendant cases. You change he or she today. I would submit when you look at it next to the term personally, uh, it, it, at least with respect to this instruction, it is still clear that it requires an individualized finding. And then, and then you put on top of that stronger point is that that separate verdict forms were submitted. Correct. And, and, and, um, uh, as I was saying, when you put on top of that, that there are these two separate jury verdict forms that have separate spaces for drug quantity, uh, both for cocaine and cocaine base for each defendant. So the jury was free to find three different options of drug weight for Collins, for cocaine, three different options for Collins, for cocaine base. And the same is true for Wilson. Uh, and they had quantities and right. So it was five kilograms or more of cocaine, 500 grams, but less than five kilos or under 500 grams for, uh, for cocaine. And then a similar, um, amounts for the cocaine base consistent with the statutory, um, maximum mandatory minimum, uh, triggering amounts. So what the problem that, uh, Wilson complains of is that he was sort of unfairly linked to, uh, Collins and the jury. It wasn't clear to the jury that they could separate it out, but these verdict forms make it absolutely clear. There's no tying their drug quantity determination from one defendant to the other. It just so happens that the evidence, uh, ties them to together as partners, and the jury did reach the same findings as to each. But but it is not a problem with instructions. Uh, and I would I would further point the court to, um, a recent, uh, passage and a footnote in the United States versus Hassan case 7 42 F 3rd 104. Uh, an opinion written by Judge King and joined by Judge Wilkinson, where, uh, footnote 18 talks about, uh, how to preserve an objection on a jury instruction. The objecting party is required to inform the court of the specific objections and grounds before the jury retires to deliberate. Very to object will in most instances preclude appellate review. And here, where you're complaining about basically the difference between the word they and the word he, I would submit that that is an objection that's got to be raised so the district court can address it so that the government can respond before the jury goes out to deliberate. As as counsel for my colleague, Mr Libby points out, these jury instructions were not sent back to the jury room during their deliberation. So the chances that they were engaging in this sort of hyper technical parsing of what the meaning of the word they versus the word he is is extremely unlikely. And given that the evidence in this case really was that the two were partners equally responsible for this drug distribution business on able to foresee the same amounts, I would submit that there's no prejudice on the jury instruction issue. If I could turn briefly to address the suppression issue in the case, uh, and I think it bears just a fax leading up to this traffic stop. That's at the heart of the, uh, the issue here. Um, you, uh, had testimony on controverted testimony at the suppression hearing that, uh, the D. E. A. In Houston, uh, and working with the Harris County, uh, Sheriff's office gets a tip that this particular vehicle is going to show up at a residence carriers. Unless one of the other judges want to hear. How about go straight to the consent issue? Sure. Just what's really challenged. So the only record, uh, only evidence in the record on consent is from two officers. I know that there is some dispute on that point, but two witnesses testified that, uh, Collins consented to the search. Why isn't there more? Why don't why don't we have the testimony of the officer who allegedly obtained the consent? Well, why didn't there more testimony on this particular aspect of the search? There's there's several reasons. First, as your honor noted it during your examination of my colleague, Mr Liebig, the government was not directly put on notice that the voluntariness of consent was going to be raised as an issue. And when you have this traffic stop that occurs after police and law enforcement agents observe a hand to hand drug deal, the government certainly, uh, I think was in the right to focus not only on consent, but also on the fact that there was clearly probable cause to support. Uh, so the government didn't rely completely on consent as its sole basis. But not at all. If you look at the government, establish the legality of the church judge tracks. So if you look at the government's response, it's it's it's very clear. We were I think we take a three alternative theory approach in our rule on anything other than consent. He didn't judge judge. The district judge sort of stopped at consent. I think that in his mind, that was the only evidence that he had. And submit can affirm on any theory supported by the evidence in the record and the evidence in the record here certainly is that they having just observed a hand to hand drug deal. Uh, but if we go on alternative theory, like you're suggesting, don't in that dependent on factual findings. Well, interesting in this, in this case, although Judge Hilton didn't make factual findings, there really is only one version of facts on those events in the record at all. And it is uncontroverted that these agents who testified observed Collins conduct a hand to hand drug deal with a female in a parking lot. He's followed right from the parking lot. They also stopped the female's car at at more or less the same time. Maybe there was a couple of minutes difference and they find drugs in her car. She's got cocaine powder on her pants from trying to hide the drugs. And so, um, finding toe to fall back on. But with only one version of facts in the record, I would submit that the court would be free to make a finding that the search was alternatively supported by probable cause. And thus, consent really wasn't the only issue here. Um, at the suppression hearing, does the defendant have any burden of going forward? Or does the defendant merely rest by raising the issue, putting it on the government, the burden to prove  . . .  .   . . . . . . . . . . . . . . .  . .   .      don't
judges: William B. Traxler Jr., J. Harvie Wilkinson III, Barbara Milano Keenan